**24SL-CC03404**

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

**IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **VALERIE WALLER,** | ) | |
| *individually and on behalf of* | ) | **Case No. _____** |
| *all others similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **COSTCO WHOLESALE CORP.,** | ) | |
| **NIAGARA BOTTLING, LLC,** *and* `` | ) | SERVE AT: |
| **DOES 1 through 10,** | ) | CT Corporation System |
| | ) | 120 S. Central, #400 |
| **Defendants.** | ) | St. Louis, MO 63105 |

<u>CLASS ACTION PETITION</u>

Plaintiff Valerie Waller, individually and on behalf of all others similarly situated, hereby files this Class Action Petition against Defendants Costco Wholesale Corp. ("Costco"), Niagara Bottling, LLC ("Niagara"), and DOES 1 through 10 (collectively "Defendant(s)") for their false, misleading, and deceptive production, bottling, marketing and distributing of their products constituting breach of warranty, breach of implied contract, and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

## I.     <u>INTRODUCTION</u>

1.     Defendants market and sell a variety of consumer products, including food and beverages.  One of those Products is Defendants' "Kirkland"- branded purified water, sold in 16.9 oz. bottles emblazoned with the words "purified water, ***with minerals added for taste***" on each bottle, as well as the outside packaging of each case (the "Product")(emphasis added).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM





2.     Although the bottles come packaged in bundles of various sizes, ranging from 40 to 12 bottles per package, the labeling construct is uniform across each variety.  In each case, the outside wrapper for the bundle, along with each bottle, advertises that the Product is purified water, "*with minerals added for taste.*"

3.     Surprisingly, however, *on the bottom of the packaging,* the garbled, almost impossible-to-read "ingredients" label reveals that the Product, instead of being purified water "*with minerals added for taste,*" is instead purified water "with" non-mineral, synthetic chemical additives.

4.     To be clear, this lawsuit does not in any way assert that the water in the Product is not purified water, and/or that the "purified drinking water," claim is inaccurate.[1]  Rather, the only alleged false statement in this case is that the purified water is "*with minerals added for taste.*"

5.     On the wavy film covering on the *underside* of each carton of purified water, a Product usually stacked upon itself on store shelves, the following labeling appears (example shown on 40-pack

---

[1] Plaintiff is not, in any manner, contesting the use of the term "purified water" to refer to the purified water contained in the Product.  The FDA explicitly regulates the term "purified water," to ensure that the water has been produced "by distillation, deionization, reverse osmosis, or other suitable processes and that meets the definition of 'purified water,' may be [labeled] 'purified water'." *See, e.g.,* 21 C.F.R. § 165.110(a)(2)(iv). Plaintiff is not contesting that the water used in the product is properly produced "purified water," and is not contesting Defendants' use of that label. Plaintiff's lawsuit deals with the *additives* to what Plaintiff accepts is purified water. For these reasons, any contention that this lawsuit is preempted is misled.

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

of Product):



6.     By magnifying the picture substantially, the wavy and garbled "ingredients" label can be discerned:

> INGREDIENTS: Purified Water, Potassium Bicarbonate, Sodium Bicarbonate, Calcium Citrate, Sodium Chloride, Magnesium Oxide.

7.     To the reasonable consumer's surprise, the Product, instead of being purified water "*with minerals added for taste*," is, in fact, purified water "with" a cocktail of different ingredients, all of which do more than simply affect "taste," and one of which is artificial sodium bicarbonate (synthetically-produced baking soda, medically used as an *antacid*), something that is indisputably *not* a mineral, and something having significant side effects, especially when ingested on a long-term basis.

8.     This construct is especially deceptive because the "ingredients" label is exceedingly obscure (seemingly intentionally hidden), and not something a consumer would normally look for in the first place when buying purified water "*with minerals added for taste,*" which a consumer does not expect to contain anything other than purified water and minerals.  Other than the hidden ingredients statement, the consumer purchasing a block of the water has no warning at all that purified water "*with minerals added for taste*" instead is purified water with an artificially-created, synthetic chemical

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

additive like sodium bicarbonate.

9.      The claim "*with minerals added for taste*" is false and deceptive for multiple reasons, most glaringly of which is the fact that sodium bicarbonate is *not* a "mineral" by any definition, but rather is a synthetic, lab-produced additive that can have significant gastrointestinal side effects, especially when ingested on a long-term basis.  No reasonable consumer would expect this synthetic and potentially harmful ingredient to be added to purified water "with minerals added for taste."

10.     Worse, even if a consumer somehow stumbles upon the ingredient label (hidden on the underside of the packaging), the uninformed consumer would most likely just assume that sodium bicarbonate is a mineral, a natural and generally healthful additive, which it is not.  The average consumer has no idea what sodium bicarbonate is; and the labeling (to the extent it is even noticed), if anything, misleads the consumer into believing that sodium bicarbonate is a mineral.

11.     In short, the reasonable consumer purchases the Product believing they are receiving purified water that is "*with minerals added for taste*," and instead receives purified water with a synthetic chemical compound that is not a mineral and which is, at best, an artificial attempt to mimic a mineral.

12.     Knowing consumers prefer purified water having "minerals added for taste," Defendants have instead inserted a synthetic chemical compound into each bottle and then essentially concealed that fact from the consumer by implying that the compound is a "mineral," which it is not.  In doing so, Defendants promised consumers a superior Product –  purified water having added minerals-- but instead provided purified water with a non-mineral, synthetic chemical compound that consumers do not expect and do not want.

13.     Moreover, because sodium bicarbonate is "added for taste" and imparts flavor to the purified water – and is indisputably artificial – federal and identical state labeling requirements mandate that the water should be labeled "artificially flavored." *See, e.g.,* 21 C.F.R. § 101.22(i)(2).  Because it is

Electronically Filed - ST. LOUIS COUNTY - July 22, 2024 - 05:55 PM

not so labeled, the Product violates both federal and state labeling regulations.  This violation bolsters Plaintiff's deception claim and provides a fully-independent basis for liability under the MMPA.[2]

14.     In any event, pursuant to the MMPA, for multiple reasons, Defendant's practice is illegal.

15.     In addition, and/or in the alternative to the above, since the initial offering of the Products, each and every container of the Products has borne a uniformly-worded label falsely claiming the Product is "*with minerals added for taste*."  That statement is false because sodium bicarbonate is not a mineral and is otherwise completely unexpected in the Product.  Those uniformly-worded false statements give rise to additional and/or alternative claims under Missouri law.

## II.     PARTIES, JURISDICTION, AND VENUE

16.     Plaintiff Valerie Waller is a citizen and resident of St. Louis County, Missouri.

17.     Plaintiff brings this Class Action Complaint individually and on behalf of a putative class of Missouri residents, and/or a putative subclass of consumers from certain states, the "Consumer Protection Subclass."

18.     Defendant Costco Wholesale Corp. is a Washington corporation having its principal place of business, according to the Missouri Secretary of State, at 999 Lake Dr., Issaquah, Washington, 98027-8990.  Defendant can be served at CT Corporation System, 120 S. Central Ave. Ste. 400, Saint Louis, MO 63105.

19.     Defendant Niagara Bottling, LLC is a Delaware limited liability company having its principal place of business, according to the Missouri Secretary of State, at 406 N. Main St. Suite B, Rolla in Missouri.  Defendant can be served at Cogency Global, Inc., at the same Rolla address.

20.     The true names and capacities of the Defendants sued herein as DOES 1 through 10,

---

[2] As set forth in more detail *infra,* the MMPA expressly prohibits "unfair practices," which are defined by Missouri Code of Regulation, 15 C.S.R. § 60–8.020 as including "any practice" which, *inter alia,* "[o]ffends any public policy … established by [Missouri] statutes." *Id.* § 60–8.020; *see also* Missouri Code of Regulation, 19 C.S.R. § 20.1045, adopting *inter alia,* 21 C.F.R. § 101.22(i)(2).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

21.     Defendants, directly and through their agents, have substantial contacts with, and receive substantial benefits and income from and through the State of Missouri. Defendants are the owners, manufacturers, and distributors of the Products, and the entities that created and/or authorized the false, misleading, and deceptive packaging of the Products.

22.     Venue is proper in this Court because Plaintiff was injured in this venue and lives within this venue.

23.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

24.     <u>Class definitions</u>: Plaintiff brings this action on behalf of Plaintiff and a class of similarly-situated persons preliminarily-defined[3] as follows: All persons who purchased the Products[4] during the Class Period while in one of the specific states having consumer protection statutes materially-identical to the MMPA ("Consumer Protection States"). In addition, and/or alternatively,

---

[3] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification. Included within this reservation is a potential subclass of those citizens in those states having consumer protection laws materially-similar to the MMPA, set forth *infra*. Each state therein has a consumer protection statute that broadly prohibits deceptive conduct; likewise, no state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Thus, Defendant's conduct alleged herein violates each statute's shared prohibitions.

[4] As that term and label is defined herein.

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

Plaintiff brings this action on behalf of herself and a Missouri subclass of similarly-situated persons defined as follows: All persons, who, within the Class Period, purchased the Products in the State of Missouri.  The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

25.    <u>Numerosity</u>:  Upon information and belief, the Class includes thousands of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

26.    <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Products to Plaintiffs.

27.    <u>Adequacy</u>:  Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent and experienced counsel, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and Plaintiff's counsel.

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

28.    <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Products; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

29.    <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## III.    BACKGROUND

30.    As many as 70% of consumers say they're willing to pay a premium for food products in the natural, ethical, enhanced or "less of…" categories.[5]  Consumers undeniably, more and more, prefer healthier foods without added synthetic or artificial ingredients.  *Id.*  This is especially the case for consumers purchasing purified water *"with minerals added for taste,"* as minerals are widely perceived to be natural and healthful.[6]

31.    In a consumer survey conducted in March 2022, 48% of consumers rated chemicals in

---

[5] *See* Consumer Health Claims 3.0 The Next Generation of Mindful Food Consumption, available at https://www.lek.com/insights/ei/next-generation-mindful-food-consumption (last visited January 30, 2024).

[6] A recent consumer survey conducted by the International Food Information Council ("IFIC") found that almost thirty percent of the public consider additives in food a top concern. Tom Nelter, Environmental Defense Fund, Chemicals Policy Director, Chemicals in food continue to be a top food safety concern among consumers, Food Navigator, Sept. 20, 2021.

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

their top category of food safety concern, a factor that further increases the desirability of purified water having just natural minerals.[7]

32.     Nonetheless, consumers are often busy and distracted while shopping, however, and the average consumer spends less than 20 seconds making any individual in-store purchasing decision.[8] That decision hinges almost entirely on the product's front labeling because the average consumer does not have the time – while presumably on a schedule and surrounded by multiple other consumers – to inspect the small font on the underside of a stacked Product to determine whether it tends to support and/or refute a prominent claim, such as purified drinking water *"with minerals added for taste"* on the front of the Product.



33.     As stated, however, *on the bottom of the packaging,* the garbled, almost impossible-to-read "ingredients" label reveals that the purified water, instead of being "*with minerals added for taste,*" in fact comes "with" non-mineral, synthetic chemical additives like sodium bicarbonate.

34.     To again clarify, this lawsuit does not claim the water in the Product is not purified water, or that the "purified drinking water" claim is inaccurate.   This lawsuit assumes the purified drinking

[7] *Id.,* citing IFIC Annual Survey (2022), available at: https://foodinsight.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf
[8] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window/    (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited January 24, 2024).

water is, in fact, purified water.   Instead, the only alleged false statement in this case is that the purified water is "*with minerals added for taste*."   That statement is false and misleading for all the reasons set forth herein.

35.     Hidden on the underside of the packaging (for a Product that comes stacked on shelves) is a garbled "ingredients" statement:

INGREDIENTS: Purified Water, Potassium Bicarbonate, Sodium Bicarbonate, Calcium Citrate, Sodium Chloride, Magnesium Oxide.

36.     To the reasonable consumer's surprise, the purified water, instead of having "*minerals added for taste,*" in fact, contains sodium bicarbonate (synthetically-produced baking soda, medically used as an *antacid*), something that is indisputably *not* a mineral, and something having significant side effects, especially when ingested on a long-term basis.

37.     The consumer expects purified water to be pure, not to contain a cocktail of additives, and especially not sodium bicarbonate (synthetically produced baking soda, medically used as an *antacid*).  These ingredients are unwelcome and unexpected for a consumer seeking pure water, and may have significant side effects, especially when ingested on a long-term basis.

38.     This construct is especially deceptive because the "ingredients" label is exceedingly obscure (seemingly intentionally hidden), and not something a consumer would normally look for in the first place when buying purified water with "*minerals added for taste,*" which a consumer does not expect to contain anything other than purified water and minerals.  Other than the hidden ingredients statement, the consumer purchasing a block of the water has no warning at all that purified water "*with minerals added for taste*" instead is purified water with an artificially-created, synthetic chemical additive like sodium bicarbonate.

39.     The claim "with minerals added for taste" is false and deceptive for multiple reasons,

10

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

most glaringly of which is the fact that sodium bicarbonate is *not* a "mineral" by any definition, but rather is a synthetic, lab-produced additive that can have significant gastrointestinal side effects, especially when ingested on a long-term basis.

40.     Moreover, in addition to the fact that sodium bicarbonate is not a mineral, one of the other additives, calcium chloride, definitely does not just "add taste."

***Sodium Bicarbonate is Not a Mineral; It is a Synthetic Substance that, at Best, Mimics a Mineral***

<u>Consumer's Interpret "Mineral" As a Natural, or Naturally-Produced Substance</u>

41.     Especially in the food context, the term "mineral," often used together in the phrase "vitamins and minerals," generally refers to a clean, naturally-occurring and earth-produced inorganic ingredient having various healthful effects.

42.     For instance, the term "mineral," in the nutrition context, is defined by the U.S. Department of Health & Human Services ("USDHHS) National Institutes of Health, Office of Dietary Substances, as follows:

> a. "mineral: In nutrition, an inorganic substance *found in the earth* that is required to maintain health."

<u>National Institutes of Health ("NIH") Glossary</u>, Multivitamin/mineral Supplements (emphasis added).[9]

43.     The fact that the NIH specifies that a mineral is something "found in the earth, emphasizes one of the most important facets of a mineral for a consumer, especially of something like purified water: a mineral is *natural,* coming from the earth.  Consumers do not expect a "mineral" to be an artificial, synthetically-created salt attempting to mimic a mineral.

44.     Consistently, MedlinePlus, also citing the NIH, defines a "mineral" as "those elements *of*

---

[9] NIH On-line Glossary: https://pubchem.ncbi.nlm.nih.gov/compound/516892#section=2D-Structure (last visited , January 24, 2024).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

*the earth* and in foods that our bodies need to develop and function normally."[10]

45.     This definition also reinforces the fact that consumers interpret the term "mineral" as referring to a natural, earth-derived ingredient.

46.     In addition, outside of the food context, the term "mineral" is consistently defined as a naturally-occurring substance. For instance, the American Heritage Science Dictionary defines "mineral" as:

> a. A *naturally occurring*, solid, inorganic compound having a uniform composition and a regularly repeating internal structure.  Minerals typically have characteristic hardness and color, or range of colors, by which they can be recognized. Rocks are made up of minerals.
>
> b. A *natural substance* of commercial value, such as iron ore, coal, or petroleum, that is obtained by mining, quarrying, or drilling.

<u>American Heritage Science Dictionary</u> (definition of "mineral")(emphasis added).[11]

47.     Consistently, over and over, every definition of "mineral" emphasizes that it is a *naturally-occurring* or *natural* substance.

48.     As another example, the American Heritage Dictionary of the English Language provides that a "mineral" is:

> a. "1. A *naturally occurring*, homogeneous inorganic solid substance having a definite chemical composition and characteristic crystalline structure, color, and hardness."
>
> b. "2. Any of a various *natural substances*, as: (a) an element, such as gold or silver. (b) an organic derivative, such as coal or petroleum. (c) a substance,

---

[10]https://medlineplus.gov/definitions/mineralsdefinitions.html#:~:text=Minerals%20are%20those%20elements%20on,molybdenum%2C%20manganese%2C%20and%20selenium. (last visited January 25, 2024).
[11] https://www.dictionary.com/browse/mineral# (collecting definitions of "mineral")

Electronically Filed - ST. LOUIS COUNTY - July 22, 2024 - 05:55 PM

such as stone, sand, salt, or coal, that is extracted or obtained from the ground or water and used in economic activities" …

American Heritage Dictionary of the English Language (definition of "mineral")(emphasis added).[12]

49.    As shown, the most prominent definitions of "mineral" describe it as a "naturally occurring, homogenous inorganic substance…" and/or "[a]ny of various natural substances…" *Id.*

50.    Further, Wikipedia (citing sources), defines "mineral" as "a solid substance with a fairly well-defined chemical composition and a specific crystal structure that *occurs naturally* in pure form."[13] Wikipedia's comprehensive discussion of "minerals" consistently indicates that minerals are natural substances.

51.    Moreover, another popular online dictionary, the Collins COBUILD Advanced Learner's Dictionary, similarly defines "mineral" as follows:

a.    "a mineral is a substance such as tin, salt, or sulfur that is *formed naturally* in rocks and in the earth."

Collins COBUILD Advanced Learner's Dictionary (definition of "mineral")(emphasis added).[14]

52.    Similarly, the Longman Dictionary of Contemporary English defines "mineral" in two relevant manners, defining the term as:

a.    "a substance that is *formed naturally* in the earth, such as coal, salt, stone, or gold."

b.    "*a natural substance* such as iron that is present in food and is important for good health."

Longman Dictionary of Contemporary English (definition of "mineral")(emphasis added).[15]

---

[12] https://www.ahdictionary.com/word/search.html?q=mineral&submit.x=26&submit.y=21 (last visited January 20, 2024)
[13] Wikipedia, "mineral," citing multiple sources: https://en.wikipedia.org/wiki/Mineral (last visited January 20, 2024).
[14] https://www.collinsdictionary.com/us/dictionary/english/mineral (last visited, January 18, 2024).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

53.     In similar fashion, the Encyclopedia Britannica defines "mineral" as a "*naturally occurring* homogeneous solid with a definite chemical composition and a highly ordered atomic arrangement; it is usually formed by inorganic processes." Encyclopedia Britannica Online (definition of "mineral")(emphasis added).[16]

54.     As shown, a "mineral" is consistently defined as a "naturally occurring" and/or "natural" substance.  Accordingly, the reasonable consumer, especially one seeking the purest water, would interpret "mineral" in the same fashion.  A consumer would *not* expect the term "mineral" to refer to any artificial, synthetically-produced substance.

55.     Indeed, as Encyclopedia Britannica specifically recognizes, "[a] mineral, *which by definition must be formed through natural processes,* is **distinct** from the synthetic equivalents produced in the laboratory." (emphasis added) *Id.*

56.     This statement is particularly relevant here, as sodium bicarbonate is an attempt to mimic a mineral, nahcolite.  Yet, as the above definitions make clear, and the Britannica source further clarifies, a synthetic attempt to mimic a mineral is not a mineral as consumers understand that term.  Synthetically-produced sodium bicarbonate is not something a reasonable consumer understands as a "mineral."

57.     The use of sodium bicarbonate instead of nahcolite means that the Product contains synthetically-created, artificial ingredients that are not "minerals," as that term is employed in the nutrition context and understood by the reasonable consumer.

*Sodium Bicarbonate Is Not a "Mineral" as Consumers Understand the Term*

58.     Sodium bicarbonate fits none of the above definitions of "mineral."  Most importantly, sodium bicarbonate is not natural or naturally produced.

---

[15] https://www.ldoceonline.com/dictionary/mineral (last visited, January 12, 2024).
[16] https://www.britannica.com/science/mineral-chemical-compound (last visited January 29, 2024).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

59.     Sodium bicarbonate, commonly known as baking soda or bicarbonate soda, is a synthetically-produced chemical compound with the formula $NaHCO_3$.

60.     Although sodium bicarbonate can have a somewhat crystalline structure, it is a salt composed of a sodium cation (Na+) and a bicarbonate anion.[17] As illustrated *supra,* nearly every common definition of "mineral" refers to a natural, or naturally-occurring inorganic substance with a definite chemical composition and a regular internal crystalline structure. Sodium bicarbonate does not have those or any other properties of a naturally occurring mineral.[18]

61.     In addition to the above-referenced definitions, the International Mineralogical Association ("IMA"), the organization responsible for defining what is and is not a mineral, has not classified sodium bicarbonate as a mineral.[19]  The IMA's classification system is widely accepted in the geological community.

62.     The structure of sodium bicarbonate is dissimilar to minerals as well; minerals, for instance, are typically solid at room temperature, retaining their crystalline structure.   Sodium bicarbonate, on the other hand, cannot maintain a crystalline form, and is instead considered a salt that easily dissolves in water.

63.     Similarly, the chemical composition of minerals is fixed and cannot be altered without changing the substance's identity; whereas sodium bicarbonate can be easily decomposed into its constituent elements.

64.     Consequently, the physical and chemical properties of sodium bicarbonate do not fit the criteria for minerals, according to the *Nickel-Strunz* Classification of Minerals, which is the universal

---

[17] *See, e.g.,* WebMD (Sodium Bicarbonate – Uses, Side Effects, and More),  available at: https://www.webmd.com/drugs/2/drug-11325/sodium-bicarbonate-oral/details (last visited January 31, 2024).
[18] https://pubchem.ncbi.nlm.nih.gov/compound/516892#section=2D-Structure
[19] The New IMA List of Minerals, updated January 2024, is available online at: http://cnmnc.units.it (select "IMA list of minerals" on left tab).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

standard for mineral classification, and which does *not* list sodium bicarbonate as a mineral.[20]

65.     Minerals are generally formed through geological processes (cooling of magma or precipitation of water, for instance), whereas sodium bicarbonate is produced through a chemical reaction in a laboratory setting. *See id.*

66.     In summary, sodium bicarbonate is not a "mineral" as that term is commonly understood by the consuming public, or as that term is used in the geological or other scientific communities, or as that term is otherwise understood across the spectrum.  At best, it is a synthetic substance that is attempting to mimic a mineral.

67.     The "with minerals added for taste" claim does not inform the consumer that the purified water instead is "with" synthetically-produced chemicals like sodium bicarbonate.

*Consumers Do Not Expect, or Want, Sodium Bicarbonate Instead of Minerals*

68.     Even if it were expected, consumers do not prefer synthetic sodium bicarbonate over minerals.  Sodium bicarbonate can act as a powerful chemical having profound effects on those who ingest the substance, especially over a long-term basis.

69.     In fact, sodium bicarbonate is commonly used as a *medication* to treat multiple disease pathologies, including cardiac arrest and acute acidosis.[21]   The fact it is commonly used as a medication underscores how powerful the substance can be; accordingly, as would be expected, it also carries many risks.

70.     As just one example, because of rapid alkalotic effects, sodium bicarbonate should never be ingested by persons having underlying metabolic or respiratory alkalosis, as it can exacerbate

---

[20] *See, e.g.,* https://sptab.com/strunz-classification-of-minerals/#:~:text=The%20Strunz%20classification%20is%20the,International%20Mineralogical%20Association%20(IMA) (last visited January 27, 2024).
[21] *See, e.g.,* <u>Sodium Bicarbonate</u> (NIH Continuing Education Activity Outline), available at: https://www.ncbi.nlm.nih.gov/books/NBK559139/   (last accessed January 24, 2024)

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

symptoms.[22]

71.     Similarly, due to its ability to buffer pH and influence acid-base shifts, sodium bicarbonate can also influence a multitude of drug-drug interactions, including with antibiotics and NSAID (non-steroidal anti-inflammatory drugs), medicines that are widely used to relieve pain, reduce inflammation, and bring down temperature.[23]

72.     Even worse, the long-term ingestion of sodium bicarbonate has been known to create the following side effects:

    a.  Metabolic alkalosis – resulting from an imbalance in the body's acid-base levels; metabolic alkalosis can cause nausea, vomiting, and confusion.

    b.  Fluid retention - Sodium bicarbonate can lead to fluid retention, which may result in swelling, particularly in the legs and other extremities.

    c.  High Blood Pressure: Increased sodium intake from sodium bicarbonate can potentially contribute to elevated blood pressure.[24]

    d.  Osteoporosis: Prolonged use of sodium bicarbonate may interfere with calcium absorption, potentially leading to a decrease in bone density and an increased risk of osteoporosis.

    e.  Hypokalemia: Long-term use may lead to low potassium levels, resulting in weakness, muscle cramps, and disturbances in heart rhythm.

    f.  Worsening Kidney Function: Individuals with kidney issues may experience worsening kidney function with prolonged ingestion of sodium bicarbonate.

    g.  Alkalosis-Induced Respiratory Issues: Metabolic alkalosis caused by sodium

---

[22] *See, e.g., id.*
[23] *See, e.g., id.*
[24] *See, e.g.,* Drugs.com (Sodium Bicarbonate Side Effects) available at: https://www.drugs.com/sfx/sodium-bicarbonate-side-effects.html (last accessed January 31, 2024).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

bicarbonate can lead to breathing difficulties as a compensatory mechanism to maintain proper blood pH.

h.  Gastrointestinal Disturbances: Constipation, bloating, and increased stomach acidity are potential gastrointestinal side effects of long-term sodium bicarbonate ingestion.[25]

73.     Indeed, sodium bicarbonate works the same way as many over-the-counter antacids by reducing stomach acid; just as the long-term use of those medications are harmful, so too is the long-term use of sodium bicarbonate.  In fact, experts recommend that people should not use sodium bicarbonate for longer than 2 weeks at a time.[26]  According to the Mayo Clinic, people should "not take sodium bicarbonate … [f]or a long period of time," and specifically, they should "not take sodium bicarbonate for more than 2 weeks."[27]

74.     Overall, sodium bicarbonate, especially when used on a long-term basis, can have multiple, powerful and unwanted effects on humans.

75.     For all those reasons as well, consumers do not expect or want a synthetic substance in their purified water, instead of the promised "*minerals added for taste.*"   Yet its inclusion is entirely hidden from consumers other than in the fine-print "ingredients" box on the bottom side of the stacked product.

76.     Defendant knows that consumers are willing to pay more for purified water that is labeled as being "with minerals added for taste" because they perceive it to be a better, natural alternative to

---

[25] *See, e.g.,* WebMD (Sodium Bicarbonate, Side Effects), https://www.webmd.com/drugs/2/drug-11325/sodium-bicarbonate-oral/details (last visited January 3, 2024).

[26] *See, e.g.,* Medical News Today, How much baking soda is safe? https://www.medicalnewstoday.com/articles/dangers-of-drinking-baking-soda#how-much-is-safe (last accessed January 30, 2024).

[27] https://www.mayoclinic.org/drugs-supplements/sodium-bicarbonate-oral-route-intravenous-route-subcutaneous-route/precautions/drg-20065950#:~:text=Do%20not%20take%20this%20medicine%20with%20large%20amounts%20of%20milk,Instead%2C%20check%20with%20your%20doctor. (last visited January 31, 2024).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

purified water that has added synthetic chemicals.

77.      Defendant advertises and sells the Products with the intention that consumers rely on the representation made on the front of the Products' packaging, but then provides purified water that has added non-mineral synthetic chemicals like sodium bicarbonate instead of merely the promised "minerals."

### *Consumers Do Not Expect, or Want, Non-Mineral or Non-Taste-Affecting Ingredients*

78.      As stated *supra,* in addition to the unwanted presence of sodium bicarbonate, the purified water also has other additives, including potassium bicarbonate, calcium citrate, sodium chloride and magnesium oxide. These chemicals affect the water in ways beyond simply giving the water a certain "taste."   Indeed, the statement – "with minerals added for *taste*" does not adequately disclose the numerous other effects the chemical cocktail might have on the water, and the consumer.

79.      As just one example, potassium bicarbonate is an alkaline compound that, if ingested in large quantities, can disrupt the body's electrolyte balance, leading to conditions such as hyperkalemia, which can have serious, potentially fatal consequences for human health.[28]  The multiple side-effects of potassium bicarbonate include everything from irregular heartbeat, to weakness or paralysis of the limbs, to cardiac arrest.[29]

80.      Even worse, potassium bicarbonate is supposed to be avoided by pregnant or nursing people, and it may interfere or interact with certain medications.  Altogether, because of the profound effects of potassium bicarbonate, it is *not recommended to be used without a doctor's approval or prescription.*[30]

81.      Overall, while potassium bicarbonate might arguably provide benefits, it is not something

---

[28] *See, e.g.,* Healthline.com (Are Potassium Bicarbonate Supplements Safe?), available at: https://www.healthline.com/health/potassium-bicarbonate (last visited, February 14, 2024)
[29] *Id.*
[30] *Id., see also*, National Institute of Health, Potassium – Fact Sheet for Health Professionals, available at: https://ods.od.nih.gov/factsheets/Potassium-HealthProfessional/  (last visited, February 18, 2024).

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

that simply "add[s] taste" to the purified water. Rather, it significantly alters the chemical and electrolyte composition of the water, and has been shown to have a negative effect on multiple various groups of people, including those taking certain medications.  This is not something a reasonable consumer expects to have to avoid when purchasing purified water simply having "minerals added for taste."

***Defendant's Conduct is Deceptive and Misleads the Reasonable Consumer***

82.     Plaintiff and other consumers purchased the Products due to their belief that the Products contained purified drinking water that was "*with minerals added for taste*."

83.     Plaintiff and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that Products contained purified drinking water that was "*with minerals added for taste*."

84.     Plaintiff and the Class reasonably and detrimentally relied upon the Products' front labels indicating that the Products contained purified drinking water that was "*with minerals added for taste*."

85.     Plaintiff and the Class would not have purchased the Products had they known that the Products in fact, rather than having added "*with minerals added for taste*," instead had added synthetic chemicals (sodium bicarbonate), along with potassium bicarbonate, which does much more than simply "add[ing] taste."

86.     Defendant's conduct threatens Missouri consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

87.     There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual substance of the Products being purchased by consumers while simultaneously providing Defendant with a financial windfall.

***The Product Violates Federal and State Labeling Requirements Because Sodium***

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

### *Bicarbonate Acts as An Artificial Flavor*

88.     The labeling on the Product is deceptive and misleading for another, fully independent and alternative reason: it violates FDA labeling guidelines because sodium bicarbonate acts as an artificial flavor in the Products, yet that fact is undisclosed.

89.     Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

90.     Artificial flavor, on the other hand, is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

91.     A flavor is a substance that imparts taste. See 21 C.F.R. § 101.22(a)(1) and (3).

92.     Although sodium bicarbonate has many functions, it is undeniable that sodium bicarbonate imparts a slightly salty alkaline-like taste when used in purified water.

93.     Indeed, according to Defendants, this is the only purpose for *any* added ingredients to the purified water in the Product, to "add taste."

94.     Yet sodium bicarbonate is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable or other natural source, nor is it made through a natural process. *See, e.g.,* 21 C.F.R § 101.22(a)(1).

95.     Consequently, because sodium bicarbonate, as used in the Product, "simulates, resembles, or reinforces the characterizing flavor [of the purified water]," federal and identical state regulations require that the purified water be labeled "Artificially Flavored Purified Water." 21 C.F.R. § 101.22(i)(2).

Electronically Filed - ST. LOUIS COUNTY - July 22, 2024 - 05:55 PM

96.     Not only does the violation of federal and state labeling requirements reinforce the claim that "*with minerals added for taste*," is misleading, deceptive, and false; the violation provides fully separate grounds for Defendant's liability under the MMPA, which also prohibits "unfair practices," which are defined by Missouri Code of Regulation, 15 C.S.R. § 60–8.020 as including "any practice" which, *inter alia,* "[o]ffends any public policy … established by [Missouri] statutes." *Id.* § 60–8.020; *see also* Missouri Code of Regulation, 19 C.S.R. § 20.1045, adopting *inter alia,* 21 C.F.R. § 101.22(i)(2).  In short, the violation of § 101.22(a)(1) is a separate ground for finding the MMPA has been violated.

### *Allegations Relating to All Plaintiffs*

97.     As noted, *supra,* since the initial offering of the Products, the Products have borne one or more uniformly-worded labels falsely claiming the Product is "*with minerals added for taste*." (hereinafter "False Claims").

98.     In reality, for all the reasons set forth supra, a reasonable consumer would find that the False Claims are false, misleading, unfair, and/or deceptive.

99.     Defendant, as developer, manufacturer, and exclusive seller and distributor of the Products, has been aware since the Products' inception that the False Claims are in fact false.

100.     Indeed, Defendant undoubtedly did its own investigation of the Products and its marketplace prior to it being offered for sale and, of necessity, such investigation would have made Defendant aware that the False Claims are in fact false.

101.     Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing purified water that merely had *"minerals added for taste."*

102.     Plaintiff and the class members purchased the Products without being aware that the Products, while containing purified water, contain purified water that is not "w*ith minerals added for taste*," but is instead "with" artificial non-minerals.

103.    Defendant possessed specialized knowledge regarding the data and information concerning the formula of the Products and its clams.

104.    In fact, regarding the False Claims, the Product is a credence good because its purported "w*ith minerals added for taste"* claim cannot be independently verified by the consumer at the time of purchase.

105.    In purchasing the Products, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

106.    Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Products or would not have paid as much for the Products.

107.    If, at some point in the future, the Product was improved to be just "w*ith minerals added for taste*" Plaintiffs intend to, desire to, and absolutely will purchase the Product again in the future.

108.    As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

109.    By marketing, selling and distributing the Product to purchasers in Missouri, Defendant made actionable statements that the Products contained "purified water" with only "minerals added for taste," but those statements were untrue.

110.    Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

111.    Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

112.    As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendant possessed specialized knowledge regarding the data and information concerning the chemical

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

formula of the Products which the Plaintiff and the class members could not and did not review.

### Facts Particular to Named Plaintiff

113.    In or around early-October, 2023, Plaintiff purchased one of the Products from the Costco located in St. Louis County, Missouri, 4200 Rusty Road, 63128.    Specifically, Plaintiff purchased the "Kirkland"- branded "Purified Water," sold in 8 oz. bottles emblazoned with the large words "Purified Water With Minerals added for Taste" on each bottle (the "Product").



114.    Due to the claims on the packaging, Plaintiff falsely believed Plaintiff was purchasing a product that contained purified water "*with minerals added for taste*."

115.    Plaintiff thereafter purchased the Product.  Plaintiff purchased the Product primarily for Plaintiff's personal, family and household use.

116.    At the time Plaintiff purchased the Product, Plaintiff was unaware of the falsity of the Products' claims.

117.    Plaintiff discovered that such claims were false only after purchasing and ingesting the Product, which Plaintiff used and/or ingested properly and according to its instructions in all respects.

118.    If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, Plaintiff would not have bought the Product.

119.    When Plaintiff purchased the Product, Plaintiff was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

120.    Specifically, Plaintiff suffered an ascertainable loss because Plaintiff did not receive the

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

expected benefit of the bargain.

121.    When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that Plaintiff was receiving purified drinking water "*with minerals added for taste.*" The Product did not provide what Plaintiff bargained for, however.

122.    The Product was not what it was purported to be.  Plaintiff did not receive the value of what Plaintiff bargained for; instead Plaintiff received a product that did not live up to one of its most-prominently advertised facet.

123.    Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Product as represented – as one that was "***with minerals added for taste,***" and the actual value of the Products to consumers seeking purified water with just flavor enhancing minerals.

124.    Plaintiff desires to and absolutely will purchase the Products again if they were formulated to actually be purified drinking water "*with minerals added for taste,*" but faces an imminent threat of harm because Plaintiff will not be able to rely on Defendant's labels in the future (without relief) and will thus be unable to purchase the Products.

125.    Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed Class, all that is relevant is that Plaintiff and the class members purchased the Products at a time within the Class Period while in Missouri.

**CAUSES OF ACTION**

**COUNT ONE: BREACH OF WARRANTY UNDER MISSOURI LAW**

126.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition.

127.    Defendant sold the Product in its regular course of business.  Plaintiff and the class members purchased the Product.

128.    Defendant made promises and representations in an express warranty provided to all

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

consumers, namely the False Claims.

129.    The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

130.    Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

131.    Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law.

132.    Defendant breached the warranty because the False Claims were false – the Product was not purified water "*with minerals added for taste.*"

133.    The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

134.    All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

135.    Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

136.    Specifically, on February 27, 2024 counsel for Plaintiff mailed to Defendant a similar version of this lawsuit, providing notice of breach of warranty, and requested that Defendant reach out about a resolution.  Defendant has not meaningfully responded, and has taken no action to remedy its breach of express and implied warranties.

137.    In addition, Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, inter alia, Defendant's testing and knowledge of the Product.

138.    Defendant has nonetheless refused to remedy such breaches.

139.    By placing the Product in the stream of commerce, and by operation of law and the facts

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

140.    Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid.  As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

141.    As a result of Defendant's breach of these warranties, Plaintiff and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

## COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW

142.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

143.    By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

144.    By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

145.    By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

146.    As a result of that breach, Plaintiff and each class member suffered damages.

## COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW

147.    Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs as if fully set forth herein.

148.    Plaintiffs plead their claim for relief in the alternative to the contract claims set forth

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

above.

149.    Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

150.    Defendant either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the Product would be as represented and warranted.    For Defendant to retain the benefit of the payments under these circumstances is inequitable.

151.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including the False Claims, Defendant reaped benefits, which result in Defendant wrongfully receiving profits.

152.    Equity demands disgorgement of Defendant's ill-gotten gains.    Defendant will be unjustly enriched unless Defendant is ordered to disgorge the unjustly obtained portion of profits for the benefit of Plaintiff and the class members.

153.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

## COUNT FOUR: VIOLATION OF THE MMPA & OTHER CONSUMER PROTECTION LAWS

154.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition, as though fully set forth herein.

155.    Defendant's acts complained of herein occurred in and emanated from the State of Missouri.

156.    Plaintiff and all members of the Class are "persons" and the Products are "merchandise" as those terms are defined under the MMPA.

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

157.    Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

158.    As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing was purified water "*with minerals for added taste.*"

159.    Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA.

160.    Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

161.    Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

162.    For all of the same reasons set forth above, Defendants' conduct also violates the materially-similar consumer protection laws of the Consumer Protection Subclass.

163.    In most (but not all) of the fifty states, the following statutes are materially-similar to the MMPA such that they are identically violated by Defendant's conduct as forth herein:

1) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
2) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;
3) Connecticut Unfair Trade Practices Act, ConnStat § 42-110a, *et seq.*;
4) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
5) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
6) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;
7) Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;
8) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;
9) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;
10) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;
11) Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;
12) Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;
13) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;
14) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;
15) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

*16)* Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
*17)* Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.;*
*18)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14- 101, *et seq.;*
*19)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
*20)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.;*
*21)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.;*
*22)* North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.;*
*23)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.;*
*24)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
*25)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
*26)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.;*
*27)* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.;*
*28)* Texas Stat. Ann. § 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
*29)* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.;*
*30)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
*31)* Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.;*
*32)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.;*
*33)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

("Consumer Protection Statutes")

164.    Accordingly, just as the MMPA has been violated by Defendant as alleged herein, each of the above Consumer Protection Statutes, all materially-similar to the MMPA, have also been violated by Defendants.

165.    Each of these Statutes is materially similar to the MMPA. Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers. No state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. Defendant's conduct violates each statute's shared prohibitions.

166.    Accordingly, just as the MMPA has been violated by Defendant as alleged herein, each of the above Consumer Protection Statutes, all materially-identical to the MMPA, have also been violated by Defendants.

167.    Each of these Statutes is materially-identical to the MMPA. Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers. No state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Instead, it is sufficient that the

Electronically Filed - ST LOUIS COUNTY - July 22, 2024 - 05:55 PM

deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. Defendant's conduct violates each statute's shared prohibitions.

168.    Plaintiff hereby re-incorporates herein the preceding facts that satisfy all of the various elements of each of the Consumer Protection Statutes.

169.    Each of the Consumer Protection Statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendant's conduct violates each statute's prohibitions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order certifying this action as a Nationwide Class, Consumer Protection Subclass and/or Missouri Subclass class action, and appointing Plaintiff as Class and/or Subclass representative and his counsel as class and/or subclass counsel.  Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned nationwide common law claims; and/or violated the MMPA and/or the Consumer Protection Statutes, and award Plaintiff compensatory damages, restitution, punitive damages, and attorneys' fees, and such further relief as the Court deems just, including injunctive relief.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: */s/ Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*