UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VALERIE WALLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-CV-1169 SRW |
| | ) |
| COSTCO WHOLESALE CORP., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Costco Wholesale Corporation and Niagara Bottling, LLC's Motion to Dismiss (ECF No. 13). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). The Court will grant the motion.

**I.      BACKGROUND**

In July 2024, Plaintiff filed this matter in the Circuit Court of St. Louis County alleging Defendants used false, misleading, and deceptive marketing on their Kirkland-branded purified drinking water sold in 16.9 ounce bottles. Plaintiff filed the suit individually and on behalf of all others similarly situated and asserted claims for breach of warranty, breach of implied contract, and unjust enrichment under Missouri law and a claim for violation of the Missouri Merchandising Practices Act ("MMPA") and other states' consumer protection laws. Defendant removed the matter to this Court and filed the pending motion to dismiss arguing Plaintiff's claims fail to state a claim for relief and are preempted by federal law.

The Court accepts the following facts as alleged in the petition as true for the purposes of deciding the motion to dismiss.

1

Defendants market and sell a variety of consumer products, including food and beverages. One of those products is Defendants' "Kirkland"-branded purified drinking water sold in 16.9-ounce bottles that state on the label of each bottle and the outside packaging of each case of bottled water, "purified water, with minerals added for taste." The cases of bottled water are sold packaged in various sizes from 12 to 40 bottles per package, and the labeling is uniform across each variety. On the bottom of the package, the ingredients label states that the bottles are purified water with non-mineral, synthetic chemical additives. Plaintiff is not asserting that the "purified water" claim is inaccurate. The additives include sodium bicarbonate, which is synthetically produced baking soda, potassium bicarbonate, calcium citrate, sodium chloride, and magnesium oxide.

The United States Department of Health & Human Services, National Institutes of Health, Office of Dietary Substances defines "mineral" as "[i]n nutrition, an inorganic substance found in the earth that is required to maintain health." MedlinePlus, citing the NIH, defines a "mineral" as "those elements of the earth and in foods that our bodies need to develop and function normally." The American Heritage Science Dictionary defines it in two different manners:

> A naturally occurring, solid, inorganic compound having a uniform composition and a regularly repeating internal structure. Minerals typically have characteristic hardness and color, or range of colors, by which they can be recognized. Rocks are made up of minerals."
>
> A natural substance of commercial value, such as iron ore, coal, or petroleum, that is obtained by mining, quarrying, or drilling.

The American Heritage Dictionary of the English Language defines a "mineral" as:

> 1. A naturally occurring, homogenous inorganic solid substance having a definite chemical composition and characteristic crystalline structure, color, and hardness.

      2. Any of various natural substances, as: (a) an element, such as gold or silver. (b) an organic derivative, such as coal or petroleum. (c) a substance, such as stone, sand, salt, or coal, that is extracted or obtained from the ground or water and used in economic activities. . .

Wikipedia defines "mineral" as "a solid substance with a fairly well-defined chemical composition and a specific crystal structure that occurs naturally in pure form." The Collins COBUILD Advanced Learner's Dictionary defines it as "a substance such as tin, salt, or sulfur that is formed naturally in rocks and in the earth." The Longman Dictionary of Contemporary English defines mineral in two ways: (1) "a substance that is formed naturally in the earth, such as coal, salt, stone, or gold" and (2) "a natural substance such as iron that is present in food and is important for good health." The Encyclopedia Britannica defines it as "a naturally occurring homogeneous solid with a definite chemical composition and a highly ordered atomic arrangement; it is usually formed by inorganic processes." Encyclopedia Britannica recognizes that "a mineral, which by definition must be formed through natural processes, is distinct from the synthetic equivalents produced in the laboratory."

Sodium bicarbonate, commonly known as baking soda or bicarbonate soda, is a synthetically produced chemical compound with the formula $NaHCO_3$ that mimics a mineral, nahcolite. Although sodium bicarbonate can have a crystalline structure, it is a salt composed of a sodium cation ($Na+$) and a bicarbonate anion. The International Mineralogical Association, the organization responsible for defining what is and is not a mineral, has not classified sodium bicarbonate as a mineral. The IMA's classification system is widely accepted in the geological community.

The structure of sodium bicarbonate is dissimilar to minerals, which are typically solid at room temperature, retaining their crystalline structure. Sodium bicarbonate cannot maintain a crystalline form and is, instead, considered a salt that easily dissolves in water. While, the

3

chemical composition of minerals is fixed and cannot be altered without changing the substance's identity, sodium bicarbonate can be easily decomposed into its constituent elements. The physical and chemical properties of sodium bicarbonate do not fit the criteria for minerals, according to the Nickel-Strunz Classification of Minerals, which does not list it as a mineral. Sodium bicarbonate is produced through a chemical reaction in a laboratory setting whereas minerals are generally formed through geological processes such as the cooling of magma or the precipitation of water.

Sodium bicarbonate is commonly used as a medication to treat multiple disease pathologies including cardiac arrest and acute acidosis. Because of rapid alkalotic effects, sodium bicarbonate should never be ingested by persons having underlying metabolic or respiratory alkalosis. Due to its ability to buffer pH and influence acid-base shifts, sodium bicarbonate can also influence a multitude of drug-drug interactions, including with antibiotics and non-steroidal anti-inflammatory drugs. The long-term ingestion of sodium bicarbonate can have side effects such as metabolic alkalosis, fluid retention, high blood pressure, osteoporosis, hypokalemia, worsening kidney function, alkalosis-induced respiratory issues, and gastrointestinal disturbances.

Sodium bicarbonate works the same way as many over-the-counter antacids by reducing stomach acid and can have gastrointestinal side effects when ingested on a long-term basis. Experts, such as the Mayo Clinic, recommend that people not use sodium bicarbonate for longer than two weeks at a time. When used in purified water, sodium bicarbonate imparts a slightly salty, alkaline-like taste. The average consumer does not know what sodium bicarbonate is.

In addition to sodium bicarbonate, Defendant's purified water bottles include potassium bicarbonate, calcium citrate, sodium chloride, and magnesium oxide. Potassium bicarbonate is an

4

alkaline compound that, if ingested in large quantities, can disrupt the body's electrolyte balance, leading to conditions such as hyperkalemia, which can be fatal. Side-effects of ingesting potassium bicarbonate include irregular heartbeat, weakness and paralysis of the limbs, and cardiac arrest. Pregnant or nursing individuals should avoid potassium bicarbonate. It also may interfere or interact with certain medications. It is not recommended for individuals to use potassium bicarbonate without a doctor's approval or prescription.

As many as 70% of consumers say they're willing to pay a premium for food products in the natural, ethical, enhanced, or "less of . . ." categories. Consumers more and more prefer healthier foods without added synthetic or artificial ingredients. In a consumer survey conducted in March 2022, 48% of consumers rated chemicals in their top category of food safety concern. The average consumer spends less than 20 seconds making any individual in-store purchasing decision.

Plaintiff purchased Kirkland's water bottles due to her belief that the product contained purified drinking water with minerals added for taste. She made her decision in reliance on Defendants' claim that it was purified drinking water with minerals added for taste. Plaintiff relied on the product's front labels that made that claim. She would not have purchased the product had she known that it included synthetic chemicals including sodium bicarbonate and potassium bicarbonate.

In October 2023, Plaintiff purchased the product from a Costco located at 4200 Rusty Road, St. Louis, Missouri, 63128. Plaintiff bought a case of eight-ounce bottles. Plaintiff purchased the product for her personal, family, and household use. Plaintiff desires to and will purchase the product again if formulated to actually be purified drinking water with flavor-

enhancing minerals, but Plaintiff will not be able to rely on Defendant's labels in the future, without the requested relief.

## II.   STANDARD

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555 & n.3. *See also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quotation omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).

## III.   DISCUSSION

Defendants ask the Court to dismiss all of Plaintiff's claims for two reasons. First, Defendants argue Plaintiff's state law claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq*. and the Nutritional Labeling and Education

6

Act ("NLEA"), 21 U.S.C. §§ 343, *et seq*. Defendants assert Plaintiff's claims are expressly preempted because they impose obligations that would differ from federal law. In the alternative, Defendants contend the claims are impliedly preempted. Defendants also argue the Court should dismiss Plaintiff's claims for failure to state a claim. In response to Defendants' motion, Plaintiff voluntarily dismissed all of her claims except for her claim asserting a violation of the MMPA.

After considering the parties' arguments, the statutes at issue, and the case law, the Court finds Plaintiff has failed to state a claim under the MMPA. Because Plaintiff has failed to state a claim, the Court need not address Defendants' arguments regarding preemption.

The MMPA prohibits the "act, use or employment by any person of any deception, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. To state a claim under the MMPA, a plaintiff must plausibly allege that she: (1) purchased merchandise from the defendant; (2) purchased the merchandise primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property as a result of the defendant's use or employment of a method, act, or practice declared unlawful under the MMPA. Mo. Rev. Stat. § 407.025.1. Missouri amended the MMPA in 2020 and added three additional elements that "a person seeking to recover damages" must establish: (1) "that the person acted as a reasonable consumer would in light of all circumstances;" (2) "that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages;" and (3) "individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." Mo. Rev. Stat. § 407.025.1(2); *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 947-48 (E.D. Mo. 2023).

The question of "[w]hether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss." *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 971 (W.D. Mo. 2021) (internal quotation marks omitted). However, a court may dismiss a MMPA claim if it can "conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015) (internal quotation marks omitted); see also Mo. Rev. Stat. § 407.025.1 (stating a court may dismiss a MMPA claim as a matter of law if the claim "fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer"). The relevant inquiry under the MMPA is whether the product packaging's "overall appearance" is deceiving. *Browning*, 539 F. Supp. 3d at 972.

Plaintiff alleges Defendants' Kirkland brand of bottled water has deceptive labeling because it claims it is purified drinking water with minerals added for flavor when it actually includes a synthetic chemical, sodium bicarbonate, and other ingredients that do more than just enhance the flavor. However, Plaintiff is not challenging that the water is purified, and she does not allege the water does not contain any minerals or that it does not contain any minerals that add to the taste. If the water is purified and it does contain at least one taste-enhancing mineral, then the label is not deceptive. Plaintiff does not allege that anywhere on the package it states the bottled water *only* contains minerals. Furthermore, the ingredient list on the bottom of the package accurately lists the ingredients.

Several district courts have held that references to ingredients used do not imply those ingredients are used exclusively. *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1344 (8th Cir. 2022) (citing *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 937 (7th Cir. 2021)). In

8

*Song*, the Eighth Circuit held that pet food packaging that stated it contained "fresh regional ingredients" was not misleading because the packaging did not represent that *all* of the ingredients were fresh and regional; thus, "a reasonable consumer would know that some of the ingredients are neither fresh nor regional." *Id*. at 1345. Similarly, here, no reasonable consumer would interpret "purified water with minerals added for taste" to mean only minerals and nothing else. Nor would a reasonable consumer interpret the phrase to mean that the mineral in the water has no other purposes besides enhancing taste or expect a company to list all the possible other uses of the ingredient on the packaging. Additionally, "Missouri law recognizes that reasonable consumers do [read and] review product labels." *Bell v. Annie's Inc.*, 673 F. Supp. 3d 993, 999-1000 (E.D. Mo. 2023). The presence of sodium bicarbonate and potassium bicarbonate in the bottled water was plainly stated on the ingredients label. For these reasons, Plaintiff's interpretation of the label is "facially illogical, implausible, and fanciful," and dismissal of the claim to the extent that it argues the label is deception for stating it is "purified water with minerals added for taste" is warranted. *Song*, 27 F.4th at 1343.

Plaintiff also asserts the label is deceptive because sodium bicarbonate acts as an artificial flavor, but that is not disclosed on the label. According to Plaintiff, the FDA's labeling guidelines require the product to be labeled, "Artificially Flavored Purified Water" because it contains sodium bicarbonate. The FDCA states that a product is misbranded if "it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact." 21 U.S.C. § 343(k). The Act allows for the Secretary of Health and Human Services to promulgate regulations establishing exemptions. *Id*. The Secretary has done so, and the regulations exempt from the artificial-flavoring requirement any "incidental additives

9

that are present in a food at insignificant levels and do not have any technical or functional effect in that food." 21 U.S.C. § 101.100(a)(3).

The regulations define "artificial flavor" or "artificial flavoring" to mean "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22(a)(1). Plaintiff argues sodium bicarbonate is an artificial flavor; thus, the label must disclose that it is artificially flavored. Defendants assert that its product falls into the exemption from the artificial flavor requirements.

Whether Defendants' product falls into the exemption cannot be resolved by the Court on a motion to dismiss. However, there is a larger issue with Plaintiff's claim that requires its dismissal – Plaintiff fails to sufficiently allege she suffered an ascertainable loss from Defendants failing to label the product as artificially flavored. To state a claim under the MMPA, a plaintiff must allege she suffered an "ascertainable loss of money or property." Mo. Rev. Stat. § 407.025.1(1). Missouri courts have interpreted this element as incorporating the long-standing "benefit of the bargain" common-law fraud remedy. *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022). "The 'benefit of the bargain' rule awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received." *Id*. (quoting *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014)).

In her petition, Plaintiff alleges she "was damaged in the amount of the difference between the cost paid for the Product as represented – as one that was '*with minerals added for taste*,' and the actual value of the Products to consumers seeking purified water with just flavor enhancing minerals." ECF No. 4, at 25 (emphasis in original). This allegation, along with similar

10

others in the petition, is a conclusory recitation of the element without any particularity. "Claims alleging deceptive practices under the MMPA sound in fraud and are subject to Rule 9(b)'s heightened pleading standard." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023); *see also Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 669 (E.D. Mo. 2020) ("However, because Rule 9(b)'s heightened pleading standard applies to MMPA claims, [the plaintiff] must state her claims with greater particularity to survive this motion to dismiss."). General conclusions without particularity are not enough.

No where in her petition does Plaintiff allege what she actually paid for the product. Nor are there any allegations where the Court, or Defendants, could possibly determine the value of bottled water that is labeled "artificially flavored" versus bottled water that is not. The sparse allegations Plaintiff does include concern her claim that the phrase "purified water with minerals added for taste" is false because it includes non-mineral ingredients, not her claim that the label must state it includes artificial flavoring. Because Plaintiff fails to sufficiently allege she has suffered an ascertainable loss, the Court must dismiss her claim under the MMPA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Costco Wholesale Corporation and Niagara Bottling, LLC's Motion to Dismiss (ECF No. 13) is **GRANTED**. The petition is **DISMISSED**, without prejudice. The Court will enter a separate Order of Dismissal.

So Ordered this 22nd day of October, 2024.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE